EXHIBIT "B"

CAUSE NO. 12-12-13542-CV

| | |
|---|---|
| NEW CENTURY FINANCIAL, INC., §<br>    Plaintiff,    §<br>        §<br>vs.    §<br>        §<br>OLEDIX TECHNOLOGIES, LLC,    §<br>CURTIS R. MARTIN, THE OLEDIX    §<br>STORE, LLC, PRACTICAL    §<br>TECHNOLOGIES, INC. and    §<br>DILIP S. DALVI,    §<br>    Defendants.    § | IN THE DISTRICT COURT OF<br><br>MONTGOMERY COUNTY, TEXAS<br><br><br><br>410th JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

New Century Financial, Inc. ("NCF" or "Plaintiff"), complains of Oledix Technologies, LLC, Curtis R. Martin, The Oledix Store, LLC, Practical Technologies, Inc. and Dilip S. Dalvi (collectively "Defendants"), and would show unto the Court the following:

### I.
### Parties, Service, Venue, and Jurisdiction

1.    The amount in controversy in this case exceeds $50,000.00 plus appropriate interest, attorneys' fees, costs and exemplary damages.   Accordingly, discovery shall be conducted under Level 2 of Texas Rules of Civil Procedure 190.

2.    Plaintiff is a Texas corporation.

3.    Defendant Oledix Technologies, LLC a/k/a The Oledix is a Maryland corporation and may be served with process by serving its registered agent, Curtis R. Martin, at the registered address of 400 East Pratt Street, 8th Floor, Baltimore, Maryland 21202 or wherever the registered agent may be found.

4.    Defendant Curtis R. Martin is a Maryland resident and may be served with process at 6322 New Haven Court, Frederick, Maryland 21703, or 400 East Pratt Street, 8th

Floor, Baltimore, Maryland 21202, or 729 East Pratt Street, 9th Floor, Baltimore, Maryland 21202, or wherever he may be found.

5.    Defendant The Oledix Store, LLC a/k/a The Oledix is a Maryland corporation and may be served with process by serving its registered agent, Brianna S. Clark, at the registered address of 729 East Pratt Street, 9th Floor, Baltimore, Maryland 21202 or wherever the registered agent may be found.

6.    Defendant Practical Technologies, Inc. is a Maryland corporation and may be served with process by serving its registered agent, Dilip S. Dalvi, at the registered address of 9600 Pulaski Park Drive, Baltimore, Maryland 21220 or wherever the registered agent may be found.

7.    Defendant Dilip S. Dalvi is a Maryland resident and may be served with process at 2117 Caves Road, Owings Mills, Maryland, 21117, or 9600 Pulaski Park Drive, Baltimore, Maryland 21220, or wherever he may be found.

8.    Venue is proper in Montgomery County, Texas pursuant to TEX.CIV.PRAC. & REM.C. §15.002(a)(1); because the account the subject of this suit was maintained in Montgomery County, Texas; the terms and conditions of the agreement with the Oledix Defendants places venue in Montgomery County, Texas; pursuant to TEX.CIV.PRAC. & REM.C. §15.035(a), entitled "Contract in Writing"; and pursuant to TEX.CIV.PRAC. & REM.C. §15.005.

9.    The amount in controversy is within the jurisdictional limits of this court.

## II.
## Nature of Case and Facts

10.     On or about April 24, 2012, NCF entered into an Agreement for Purchase and Sale of Accounts[1] (the "Agreement") with Oledix Technologies, LLC, a/k/a The Oledix and The Oledix Store, LLC, a/k/a The Oledix (collectively "Oledix") to sell, transfer and assign their accounts receivables at a discount below their face value. *See Exhibit A.* Under the Agreement, Oledix received cash from NCF making certain promises and warranties with respect to the collection of the accounts receivables and payments to NCF.

11.     By executing the Agreement, Oledix made certain continuing warranties, representations, and covenants that attended each and every sale of accounts purchased, including, *inter alia,* that:

(a)     Each account offered for sale to NCF is an accurate and undisputed statement of present indebtedness by account debtor to Oledix for a sum certain which is the full amount of the account which is due and payable in thirty days from the date of the account, and not subject to any setoff by the account debtor or the subject of any account debtor dispute. *See Exhibit A, paragraph 9 (e);*

(b)     Each account offered for sale to NCF is an accurate statement of bona fide sale, delivery and acceptance of merchandise or performance of service by Oledix to account debtor, completed to account debtor's satisfaction and is not contingent upon the fulfillment of any contract or condition. *See Exhibit A, paragraph 9(f);* and

(c)     The application for factoring completed by Oledix, all financial records, statements, books and other documents shown or given to NCF by Oledix at any time either before or after the signing of this Agreement, are complete, true, and accurate. *See Exhibit A, paragraph 9(h).*

---

[1] Factoring is a form of financing by which one business (known in the factoring industry as the "Factoring Client" which in this case are the Oledix Defendants) sells to another business (known in the factoring industry as the "the Factor" which in this case is NCF), at a discount, its right to receive payment for goods sold or services rendered to the Client's customers (identified as "account debtors" as defined by the Uniform Commercial Code).

12.     Oledix executed a security interest in favor of NCF.   Paragraph 16 of the Agreement provides:

> SECURITY INTEREST:  As a further inducement for THE COMPANY to enter into this Agreement, SELLER hereby grants to THE COMPANY, as collateral and security for the payment and performance of any and all obligations hereunder, a Security Interest, under the applicable Uniform Commercial Code, in all of SELLER's presently owned or hereafter acquired accounts, accounts receivable, contract rights, chattel paper, documents, instruments, money deposit accounts, (including the reserve account, and any portion of the Maximum Company Discount not rebated to SELLER hereunder), general intangibles, insurance policies, all goods, equipment and inventory.  SELLER shall not sell, transfer or otherwise convey or dispose of any of said property except finished inventory held for sale and sold in SELLER'S usual course of business. SELLER'S grant of a Security Interest to THE COMPANY in all presently owned or hereafter acquired accounts, accounts receivable, contract rights, chattel paper, documents, instruments, money deposit accounts, general intangibles, insurance policies, all goods, equipment and inventory, includes any other entity or name under which SELLER may do business and any other entity to which SELLER may sell, transfer, convey, or in any manner alienate its interest in SELLER of all or substantially all of SELLER'S assets, or transfer, hypothecate or liquidate all or substantially all of SELLER'S assets.

*See Exhibit A, paragraph 16.*

13.     The UCC Financing Statement was filed of record on April 30, 2012.

14.     Defendant Curtis R. Martin ("Martin") executed a personal guaranty, unconditionally guaranteeing to NCF full payment and prompt and faithful performance by Oledix.  The unconditional guaranty provided that the obligations of Martin were independent of Oledix.  *See Exhibit B.*  After the agreements were executed, NCF bought accounts from Oledix.

15.     Defendant Practical Technologies, Inc. ("Practical") received a Notice of Assignment of Accounts by Oledix to NCF.  The notice directed this Defendant to forward all payments on invoices or accounts and all future amounts due to NCF.  Practical signed the Notice on May 1, 2012.  NCF factored an invoice for Oledix and owed by Practical.  Practical and Dilip S. Dalvi ("Dalvi") confirmed the invoice was valid and would be paid by the due date.

The outstanding invoice totals the principal balance of $159,000.00. Despite requests for payment, Practical has refused to comply with the agreement and forward payment to NCF. Further, any payments made to Oledix on any outstanding invoices, whether factored or not, would be made over notice and in violation of Section 9.406 of the Texas Business & Commerce Code. *See Holloway-Houston, Inc. v. Gulf Coast Bank & Trust Company*, 224 S.W.3d 353 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

16. To date, all Defendants have failed to pay the balances owed and are in breach of the contract terms and conditions and respective guaranty and notice of assignment.

17. Plaintiff has fully performed all of its obligations to Defendants and all conditions precedent to Defendants' obligations to pay have been performed or have occurred.

18. Plaintiff is entitled to recover attorneys' fees pursuant to the agreements between the parties, including the assigned contracts between Oledix and the account debtor, and TEX.CIV.PRAC. & REM.C. §38.001 *et seq*. Plaintiff has made written demand to Defendants for payment. Plaintiff has employed the undersigned attorneys to file suit and has agreed to pay them a reasonable fee for their services.

19. In addition to the above, Defendants Practical and Dalvi conspired with Oledix and Martin to commit fraud against NCF. Oledix, Martin, Practical and Dalvi created false and/or fraudulent invoices for goods and/or services that were allegedly performed and/or delivered to Practical. Practical and Dalvi represented to NCF that the invoice purchased was a valid invoice, that the goods and/or services had been delivered and accepted and that monies would be paid by the due date of the invoice. The invoice was submitted to NCF in order to receive cash advances. NCF justifiably relied on the representations and documentation in accepting the invoice and issuing payment to Oledix.

20.     Defendants Oledix and Martin also committed fraud by creating a false and/or fraudulent invoice for services and/or items allegedly provided to The Johns Hopkins Hospital, including signing a Notice of Assignment on behalf of this account debtor and creating a false verification of the invoice purchased.  The invoice was submitted to NCF in order to receive cash advances.  NCF justifiably relied on the representations and documentation in accepting the invoice and issuing payment to Oledix.

### III.
### Causes of Action

### A.  Breach of Contract

21.     Defendant Oledix breached its contract with the Plaintiff.  Plaintiff has fully performed the contract and all conditions precedent to Plaintiff's recovery have occurred.  Although demand for payment has been made, Defendant still refuses to pay Plaintiff pursuant to the contract.  Plaintiff now sues for actual damages in the amount of at least $240,625.00, costs of Court, attorneys' fees (pursuant to the contract and TEX.CIV.PRAC. & REM.C. §38.001, *et seq.*), and prejudgment and post judgment interest.

### B.  Breach of the Continuing Guaranty & Waiver

22.     Further, NCF sues Defendant Martin for breach of the guaranty.  As consideration for NCF's agreement to factor Oledix's accounts, Martin signed a personal guaranty entitled Continuing Guaranty & Waiver. *See Exhibit B.*

23.     Pursuant to the Guaranty, Defendant Martin "jointly and severally unconditionally guarantee[d] to NCF full payment and prompt and faithful performance by the Company [Oledix] of all of its present and future indebtedness, obligations and liabilities of every kind whatsoever to NCF which may arise pursuant to the Agreement."  Defendant Martin

has failed to comply with the agreements.  Plaintiff now sues for actual damages in the amount of $240,625.00, costs of Court, attorneys' fees (pursuant to the contract and TEX.CIV.PRAC. & REM.C. §38.001, *et seq.*), and prejudgment and post judgment interest.

### C.  Breach of the Notice of Assignment

24.     Defendant Practical received the notice of assignment.  The notice of assignment notified this Defendants that Oledix's accounts had been assigned to NCF and that payment on such accounts should be made to NCF.  Once the account debtor is notified that the accounts have been assigned to NCF, by statute, the account debtor can discharge its debt only by paying NCF.  Further, any payments made directly to Oledix and/or Martin are in violation of Section 9.406 of the Texas Business & Commerce Code.  *See Holloway-Houston, Inc. v. Gulf Coast Bank & Trust Company*, 224 S.W.3d 353 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

25.     As a result of the breach by this account debtor, Plaintiff NCF is entitled to damages in the sums set forth above, in addition to costs of Court, attorneys' fees (pursuant to the assigned contract and TEX.CIV.PRAC. & REM.C. §38.001, *et seq.*), and prejudgment and post judgment interest.

### D.  Fraud

26.     NCF sues all Defendants for fraud.  Defendants intentionally and/or knowingly made material and false statements to NCF with the intent that NCF would rely upon them and be induced to act upon such reliance.  NCF did rely on such false statements by Defendants to its detriment.  As a result of the fraudulent statements and false documentation created, NCF has been damaged in an amount within the jurisdictional limits of this Court, for which it now sues, and is entitled to recover its actual damages along with punitive and/or exemplary damages.

### E. Civil Conspiracy

27.     All Defendants have engaged in a conspiracy to accomplish an unlawful purpose by conspiring to commit fraud. Defendants had a meeting of the minds of this object or course of action, committed one or more unlawful, overt acts, and therefore proximately caused NCF's damages. NCF has been damaged in an amount within the jurisdictional limits of this Court, for which it now sues, and is entitled to recover its actual damages along with punitive and/or exemplary damages.

### F. Negligent Misrepresentation

28.     All Defendants made false representations to NCF in the course of their business that were made for the guidance of NCF in its business. The Defendants did not exercise reasonable care in communicating the information to NCF and NCF has suffered damages by justifiably relying on the representations, for which it now sues.

### G. Tortious Interference with Contract

29.     NCF sues Defendants Practical and Dalvi for tortious interference with the contracts between NCF and Oledix and Martin. Practical and Dalvi's conduct was a willful and intentional act of interference with the contracts at issue and proximately caused damages to NCF. NCF has been damaged by the conduct of Practical and Dalvi, for which it now sues.

30.     **Demand for jury**. Plaintiff demands a jury trial.

### IV.
### Discovery Request

31.     Pursuant to Tex.R.Civ.P. 194, Plaintiff requests all Defendants disclose, within 50 days of service, the information or material described in Rule 194.2(a)-(l).

WHEREFORE, PREMISES CONSIDERED, Plaintiff New Century Financial, Inc. prays

Defendants Oledix Technologies, LLC, a/k/a The Oledix, Curtis R. Martin, The Oledix Store,

LLC, a/k/a The Oledix, Practical Technologies, Inc. and Dilip S. Dalvi be cited to answer and

appear herein, that upon final hearing hereof, Plaintiff have judgment for a sum within the

jurisdictional limits of this Court, together with prejudgment and post judgment interest at the

highest rate allowed by law, costs of Court, attorneys' fees, exemplary damages and for such

other and further relief to which Plaintiff may be entitled.

> Respectfully submitted,
>
> WARD LAW FIRM
>
>
> By: _____
> Richard J. Judge, Jr.
> SBN 24010146
> Parkwood One
> 10077 Grogan's Mill Road, Suite 450
> The Woodlands, Texas 77380
> Telephone:  281-362-7728
> Facsimile:  281-362-7743
> ATTORNEYS FOR PLAINTIFF
> NEW CENTURY FINANCIAL, INC.

**Montgomery County District Court**
**\*\*\*EFILED\*\*\***
File & ServeXpress
Transaction ID: 49406359
Date: Feb 08 2013 02:38PM
Barbara Adamick, District Clerk

NO. 12-12-13542-CV

| | | |
|---|---|---|
| NEW CENTURY FINANCIAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| OLEDIX TECHNOLOGIES, LLC, | § | |
| CURTIS R. MARTIN, THE OLEDIX | § | |
| STORE, LLC, PRACTICAL | § | |
| TECHNOLOGIES, INC., AND | § | |
| DILIP S. DALVI | § | 410TH JUDICIAL DISTRICT |

## DEFENDANTS PRACTICAL TECHNOLOGIES, INC. AND DILIP S. DALVI'S SPECIAL APPEARANCE

TO THE HONORABLE JUDGE OF SAID COURT:

DEFENDANTS PRACTICAL TECHNOLOGIES, INC. ("PTI") and DILIP S. DALVI ("Dalvi") file this Special Appearance and Answer (Subject Thereto) and in support thereof would show the following:

### SPECIAL APPEARANCE

#### Factual Background

Defendant PTI is a Maryland Corporation which has been operating in Maryland since 1987. *See* Exhibit 1 – Affidavit of Dilip S. Dalvi at ¶¶ 2-3. Defendant Dalvi is a Maryland resident and President and CEO of PTI. (Id.) PTI provides a wide variety of custom-designed computer technology services to private businesses. (Id.)

On March 29, 2012, PTI entered into an "Exclusive Manufacturing Agreement" and a "Non-Exclusive Dealership Agreement" with OLEDIX Technologies LLC ("Oledix"). Exhibit 1 at ¶ 4. PTI and Oledix entered into the contracts in Maryland, and made them subject to Maryland law. (Id.) PTI agreed to customize a video conference

1

system.  (**Id.**)  Oledix agreed to sell the video conference systems to PTI that were manufactured in China to be customize by PTI.  (**Id.**)  None of the customization of the systems by PTI was to be performed in Texas.  (**Id.**)  After the systems were customized, PTI could either sell them to Oledix for distribution or could sell them to another customer.  (**Id.**)

The monitors that were delivered, however, were defective and could not be used. Exhibit 1 at ¶ 5.  As a result, PTI rejected the monitors and placed them in Oledix's possession and control.

On or around May 1, 2012, PTI received a "Notice of Assignment of Accounts" from Oledix and Plaintiff New Century Financial ("New Century").  Exhibit 1 at ¶ 6. The notice stated that Oledix had retained the services of New Century and that any payments on invoices from Oledix should be directed to New Century.  (**Id.**)  PTI acknowledged receipt of the notice.

PTI has never done any business or provided any services in Texas, and is not registered to do business in Texas. Exhibit 1 at ¶ 7.  The company provides custom-designed services for the individual needs of its customers.  (**Id.**)  PTI does not have any customers and/or clients based in Texas and, therefore, does not design products for the Texas market.  (**Id.**)  PTI has never entered into any contracts in Texas for services to be performed elsewhere.  (**Id.**)  Additionally, PTI has no offices, shareholders, bank accounts, leases, real property, vehicles, chattel, business or personal equipment, loans, promissory notes, or other stock in Texas.  (**Id.**)

2

Furthermore, PTI does not advertise in Texas and has not established a channel of regular communication with Texas customers. PTI does not market its products and/or services through a distributor. PTI has a website but the website does not target Texas customers or direct solicitation to Texas customers. Exhibit 1 at ¶ 8. Further, sales and contracts are not made through the website. (Id.) Potential clients can request a quote, but cannot place an order for services through the website. PTI does not have any records of receiving requests from Texas residents. Both PTI and Dalvi were served with process in Maryland. PTI does not have an address, phone number, or registered agent in Texas.

## Argument & Authorities

The United States and Texas Constitutions do not permit a state to assert personal jurisdiction over a nonresident defendant unless that defendant has "some minimum, purposeful contact" with the state and if the exercise of the jurisdiction will not offend "the traditional notions of fair play and substantial justice." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 326 (Tex. 1998); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). The purposeful availment requirement is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

### A. PTI and Dalvi are not residents of Texas.

It is undisputed that PTI and Dalvi are not Texas residents. See Exhibit 1 at ¶¶ 2-3. Plaintiff's Original Petition reflects that Dalvi and PTI are both Maryland residents. Accordingly, Plaintiff must establish that this Court has personal jurisdiction over PTI

3

and Dalvi pursuant to the requirements of Texas' long-arm statute. *All Star Enterprise, Inc. v. Buchanan*, 298 S.W.3d 404, 411 (Tex. App. – Houston [14th Dist.] 2009, no pet.).

## B. PTI and Dalvi did not have minimum contacts with Texas.

In order to establish that a party has had sufficient "minimum contacts" with a forum state to exercise personal jurisdiction, the party must be show to have "purposefully availed itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The 'purposeful availment' requirement ensures that nonresident corporations will not be hauled into a foreign jurisdiction based on 'the unilateral activity of those who claim some relationship' with the defendant or as a result of 'random, fortuitous, or attenuated contacts.'" *All Star Enterprise*, 298 S.W.3d at 411. A court should look to the quality and nature of the contact rather than the quantity when conducting a minimal contacts analysis. *Reiff v. Roy*, 115 S.W.3d 700, 705 (Tex. App. – Dallas 2003, pet. denied).

### 1. This Court does not have specific jurisdiction over PTI or Dalvi.

"Specific jurisdiction is dispute-specific, and it attaches when the plaintiff's cause of action arises out of or relates to the nonresident defendant's contacts with the forum state." *All Star Enterprise*, 298 S.W.3d at 412. "To invoke a state's specific jurisdiction, the defendant's activities must have been 'purposefully directed' to the forum." *Id.*

The evidence establishes that PTI entered into contracts with Oledix Technologies LLC, a Maryland corporation, on March 29, 2012. *See* Exhibit 1 at ¶ 4. Pursuant to the agreements, PTI was to manufacture video conferencing systems in Maryland. (Id.)

4

Additionally, Oledix was to provide to PTI monitors in Maryland that would be utilized in the assembly of the video conference system. (Id.) The monitors were to be manufactured in and shipped from China. (Id.) The monitors that were received by PTI were defective and rejected by PTI. (Id.) Oledix currently has possession and control of the rejected monitors. (Id.)

Subsequently, PTI received correspondence from Oledix stating that Oledix had secured services from Plaintiff. *See* Exhibit 1 at ¶ 6. The notice directed PTI to send all payments on invoices from Oledix to Plaintiff. (Id.) PTI, however, never entered into a contract with Plaintiff, solicited Plaintiff's services, or sent any payments to Plaintiff. PTI never purposefully availed itself of the benefits and law of Texas during the course of the transaction between the two Maryland companies. PTI's only contractual relationship with regard to this lawsuit was with another Maryland company for the manufacture and sale of goods that would be assembled in Maryland and delivered in Maryland. Accordingly, the facts of the case fail to give rise to specific jurisdiction.

### 2. This Court does not have general jurisdiction over PTI or Dalvi.

"General jurisdiction arises when a nonresident defendant engages in systematic and continuous contacts with the forum state." *Reiff*, 115 S.W.3d at 706. The defendant's activities must be substantial. *Id.*

The affidavit of Dalvi establishes that neither he nor PTI has ever had continuous and systematic contact with the State of Texas. Dalvi is a Maryland resident of twenty-nine (29) years. *See* Exhibit 1 at ¶¶ 2-3. Additionally, PTI is a Maryland corporation that has never done business in Texas and does not have any Texas clients or customers. *See*

5

Exhibit 1 at ¶ 7. PTI does not have any offices, shareholders, bank accounts, real property, vehicles, chattel, business or personal equipment, loans, notes, promissory notes, or other stock in Texas. (Id.) Further, PTI does not advertise or recruit in Texas.

Although PTI maintains a website, it does not target Texas customers or seek business opportunities in Texas. "Internet use is characterized as falling within three categories on a sliding scale for purposes of establishing personal jurisdiction." *Reiff,* 115 S.W.3d at 705-06. The court in *Reiff* held that:

> At one end of the scale are websites clearly used for transacting business over the Internet, such as entering into contracts and knowing and repeated transmission of files of information, which may be sufficient to establish minimum contacts with a state. On the other end of the spectrum are "passive" websites that are used only for advertising over the Internet and are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state. In the middle are "interactive" websites that allow the "exchange" of information between a potential customer and a host computer. Jurisdiction in cases involving interactive websites is determined by the degree of interaction.

*Id.* (citations omitted).

PTI's website is a passive website that provides general information about the company and its services. *See* Exhibit 1 at ¶ 8. Website visitors are not able to place orders or correspond directly with PTI. (Id.) Although a person can request a quote, it cannot enter into a contract with PTI through the website. Texas courts have repeatedly held that websites such as this are not sufficient to establish personal jurisdiction. *See, e.g., Reiff,* 115 S.W.3d at 706.

The evidence presented establishes that Dalvi and PTI did not have any contact with the State of Texas, and therefore cannot be held to have had the continuous and systematic contacts necessary to establish personal jurisdiction.

### C. Even if PTI and/or Dalvi had some contacts with Texas, the exercise of jurisdiction over them would offend the traditional notions of fair play and substantial justice.

"The plaintiff bears the initial burden to show that assertion of personal jurisdiction fulfills the second due-process requirement." *All Star Enterprise*, 298 S.W.3d at 411. In determining whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, "courts may consider factors such as the burden on the defendant, the interest of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the states in furthering substantive social policies." *Id.* at 412. This case does not involve substantive social policies, but relates instead to nonpayment on an alleged account that was assigned to Plaintiff New Century. Exhibit 1 at ¶¶ 4-6. The underlying contract and terms of payment was entered into in Maryland by two Maryland residents. (Id.) Indeed the contract states that Maryland law should apply to its terms. (Id.) Texas has no significant interest in adjudicating the terms of a Maryland contract pursuant to Maryland contract law. Additionally, there is no evidence that Plaintiff cannot obtain convenient and effective relief in Maryland where both defendants reside. Accordingly, there are no facts which would suggest that the exercise of personal jurisdiction might be reasonable in this case.

7

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the above named Defendants PRACTICAL TECHNOLOGIES, INC. ("PTI") and DILIP S. DALVI ("Dalvi") pray that this Court grant their Special Appearance and for any such further relief to which they may be justly entitled.

Respectfully submitted,

HAYS, McCONN, RICE & PICKERING

By: /s/ Michael W. Magee
   **MICHAEL W. MAGEE**
   State Bar No.: 12816040
   BRIANNE A. WATKINS
   State Bar No.: 24056500
   1233 West Loop South, Suite 1000
   Houston, Texas 77027
   Telephone: (713) 752-8343
   Facsimile: (713) 650-0027
   E-Mail: mmagee@haysmcconn.com
   E-Mail: bwatkins@haysmcconn.com

**ATTORNEY FOR DEFENDANTS,
PRACTICAL TECHNOLOGIES, INC. AND
DILIP S. DALVI**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was forwarded to all attorneys of record by certified mail, return receipt request, hand delivery, fax and/or regular mail, on this the 6th day of February, 2013, as follows:

/s/ Michael W. Magee
**MICHAEL W. MAGEE**

8

**Montgomery County District Court**
**\*\*\*EFILED\*\*\***
File & ServeXpress
Transaction ID: 49406359
Date: Feb 08 2013 02:38PM
Barbara Adamick, District Clerk

# EXHIBIT "1"

NO. 12-12-13542-CV

| | | |
|---|---|---|
| NEW CENTURY FINANCIAL, INC. | § § | IN THE DISTRICT COURT OF |
| VS. | § § | MONTGOMERY COUNTY, TEXAS |
| OLEDIX TECHNOLOGIES, LLC, CURTIS R. MARTIN, THE OLEDIX STORE, LLC, PRACTICAL TECHNOLOGIES, INC., AND DILIP S. DALVI | § § § § § | 410TH JUDICIAL DISTRICT |

| | |
|---|---|
| STATE OF MARYLAND | § § |
| COUNTY OF BALTIMORE | § |

## AFFIDAVIT OF DILIP S. DALVI

Before me, the undersigned notary, on this day personally appeared Dilip S. Dalvi, the affiant, a person whose identity is known to me. After I administered the oath to affiant, affiant testified:

1. "My name is Dilip S. Dalvi. I am over 18 years old, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am a resident of Baltimore County, Maryland, and live at 2117 Caves Road, Owings Mills, Maryland 21117. I have lived in Maryland for 29 years. I have never lived in Texas.

3. I am the President and Chief Executive Officer of Practical Technologies, Inc. ("PTI"). PTI is a Maryland Corporation with its principle place of business located at 9600 Pulaski Park Drive, Baltimore, Maryland 21220. PTI began operations in Maryland in 1987. PTI provides a wide variety of computer technology services to businesses, including but not limited to:

   • Providing cost effective printed circuit board (PCB)and software design including feasibility analysis and design, options exploration, schematic design, board layout and routing, board assembly and functional testing, computer part obsolescence and design enhancements, as well as software solutions;

01146.1 / 1541283.1

- Producing surface mount and thru-hole board assemblies, ranging from simple to complex technologies for a variety of applications;

- Providing electro-mechanical assemblies ranging from small enclosures to complete chassis assemblies;

- Providing box build and integration services based upon each customer's requirements;

- Design development and manufacturing transformers with applications in various fields;

- Developing and manufacturing advanced power electronic products and systems for industrial and defense applications.

- Developing and carrying out comprehensive plans for conversion to regulation of hazardous substances compliance from existing leaded designed PCB assemblies.

4. On March 29, 2012. PTI entered into two contracts with OLEDIX Technologies LLC ("Oledix"): (1) an Exclusive Manufacturing Agreement and (2) a Non-Exclusive Dealership Agreement. A true and correct copy of the contracts are attached hereto as Exhibit 1-A. Oledix is also a Maryland corporation. PTI and Oledix entered into the contracts in Maryland, and made them subject to Maryland law. PTI agreed to customize a video conference system. Oledix purchased the video conference units from a Chinese company, and then sold the units to PTI for customization. After the video conference system had been customized by PTI, PTI could either sell the system to Oledix for distribution or sell it to another customer pursuant to the terms of the dealership agreement. None of the manufacturing of the systems was to be performed in Texas.

5. The monitors that Oledix provided were manufactured in China. The monitors that were delivered, however, were defective and could not be used to manufacture the video conference system. As a result, PTI rejected the monitors, and placed them in Oledix's possession and control.

6. On or around May 1, 2012, PTI received a "Notice of Assignment of Accounts" from Oledix and New Century Financial. *See* Exhibit 1-B. The notice stated that Oledix had retained the services of New Century Financial and that any payments on invoices from Oledix should be directed to New Century Financial. I signed the acknowledgement of receipt and returned it.

7. PTI has never done any business or provided any services in Texas, and is not registered to do business in Texas. The company provides custom-designed

services for the individual needs of its customers. PTI does not have any customers and/or clients based in Texas and therefore does not design products for the Texas market. PTI has never performed any services in Texas or entered into any contracts in Texas for services to be performed elsewhere. Additionally, PTI has no offices, shareholders, bank accounts, leases, real property, vehicles, chattel, business or personal equipment, loans, promissory notes, or other stock in Texas.

8. PTI does not advertise in Texas and has not established a channel of regular communication with Texas customers. PTI does not market its products and/or services through a distributor. PTI has a website at http://practecinc.com/. The website does not target Texas customers or direct solicitation to Texas customers. Further, sales and contracts are not made through the website. Potential clients can request a quote, but cannot place an order for services through the website. PTI does not have any records of receiving requests from Texas residents.

9. Both PTI and I were served with process in Maryland. PTI does not have an address, phone number, or registered agent in Texas.

Further affiant sayeth not.

_____
Dilip S. Dalvi

SWORN TO AND SUBSCRIBED before me, Notary Public, in this the 8ᵗʰ day of February, 2013.

_____
Notary Public

DANIEL L. BABCOCK
Notary Public
Harford County
Maryland
My Commission Expires Jan. 1, 2017

01146.1 / 1641263.1

EXHIBIT "1-A"

## EXCLUSIVE MANUFACTURING AGREEMENT

1. This Exclusive Manufacturing Agreement (hereinafter referred to as "this Agreement") is dated, March 29, 2012 BETWEEN:

   a. OLEDIX Technologies LLC, whose registered address is 729 East Pratt Street, 9th Floor, Baltimore MD, 21202 (hereinafter referred to as "OLEDIX")

   b. Practical Technologies, Inc., 9600 Pulaski Park Drive, Baltimore, MD 21220 (hereinafter referred to as ("PTI")

2. **WHEREAS:**

   a. OLEDIX ... owns intellectual property and other rights to certain technology products (All-In-One) and wishes to find a Manufacturing company for a project of manufacturing and installation of the All-In-One  (hereinafter referred to as "the Product (s)");

3. <u>DEFINITIONS</u>
   3.1 As used herein, the following terms shall have the following meanings respectively:

   a. "Product(s)" shall mean and include any and all products supplied by OLEDIX in accordance with orders and product specifications provided by OLEDIX pursuant to this Agreement;

   b. "Manufacturing Service(s)" shall mean and include any or all manufacturing products in accordance with the product specifications; packaging products in accordance with the product specifications; and providing such other services related to the manufacture of products as OLEDIX may reasonably request.;

   c. "Confidential Information" shall mean all patents, registered designs, trademarks, tooling, fixtures that is owned by OLEDIX, as well as the information, data, concepts, ideas, methods, processes, techniques, formulae, know-how, experiences, trade secrets and improvements relating to research, development, manufacturing and sale activities which are devised, developed or acquired by OLEDIX and disclosed to PTI. Confidential Information shall include not only written information, but also ( I ) information transferred orally, visually, electronically or by any other means, provided that OLEDIX expressly indicates to PTI that such information constitutes "Confidential Information"; ( ii ) All notes, analyses, presentations or other documents (including materials, plans, designs or other works), which contain or otherwise reflect such information. Confidential Information may also include, if applicable, any confidential or proprietary information of any subsidiary or other affiliate of OLEDIX;

   d. "Order(s)" means and includes any and all orders to be issued to PTI from OLEDIX at any time with respect to each of the Manufacturing Services. All such orders shall identify and specify the quantity of the products to be manufactured, and will contain other detailed instructions, including but not limited to labeling, sealing and/or packaging instructions, and the desired date and destination of delivery, and will contain

1

schedules for the Manufacturing Service and payment;

e. "Product Specification(s)" shall mean and include any and all quality requirements relating to Manufacturing Services, which are provided by OLEDIX for the purpose of Manufacturing Services pursuant to this Agreement, and shall include any and all Improvements and modifications.

## 4. MANUFACTURE & SALE

a. Subject to the terms and conditions of this Agreement and within the effective period hereof, OLEDIX hereby appoints PTI, and PTI hereby accepts the appointment by OLEDIX, as exclusive manufacturer for the Products.

b. OLEDIX shall provide PTI with Product Specifications and orders as well as Confidential Information that is necessary for the Manufacturing.

c. PTI shall arrange Manufacturing Service for Products in accordance with Product Specifications and orders provided by OLEDIX. PTI shall be responsible to maintain the quality and competitiveness of service.

## 5. RIGHTS AND OBLIGATIONS

5.1 During the effective period of this Agreement, which is intended to be five/5 years from the date of this agreement (the "Effective Period"), the rights and obligations for OLEDIX shall be as follows:

a. Prior to a period as agreed upon by both parties, OLEDIX shall submit order, related Product Specification, and/or any other requirement for Manufacturing Service during such period to PTI.

b. In order to ensure the quality of Products, OLEDIX or its designated agents shall be entitled to perform sample inspections for the Products in one or more announced on-site inspections of any Products manufactured, or in the process of being manufactured by PTI at any time during the Term. If any of the samples and/or Products do not meet the requirements of Products Specification provided by OLEDIX, OLEDIX shall give a written notice thereof to PTI and may do one or more of the following in its sole discretion: (i) require a PTI established corrective action plan and require that the discrepancy be corrected in a timely manner; or (ii) perform one or more re-audits at any time or from time to time.

c. PTI shall comply with all VAT, customs, shipping insurance and other obligations in connection with the storage and shipment of Products.

5.2 During the Effective Period of this Agreement, the rights and obligations for OLEDIX shall be as follows:

a. After receiving an Order, related Product Specifications, and/or any other requirement from OLEDIX, PTI shall confirm by returning a signed copy to OLEDIX within 5 working days upon receipt (hereinafter referred to as "Sales Confirmation"). Any confirmation in the absence of such timely reaction shall not become binding;

b. According to the order, related Product Specifications, and/or any other requirements from OLEDIX, which have been confirmed by OLEDIX, PTI shall strictly perform all Manufacturing Services to meet those requirements;

c. According to the schedule of Manufacturing Service in the order, PTI shall provide

2

samples of each Product to OLEDIX freely for inspection, and take proper cooperation with the on-site inspection by OLEDIX;

d. PTI shall arrange the shipment and/or installation for Products pursuant to standing instructions from OLEDIX;

**6. WARRANTIES**

6.1 PTI hereby warrants to OLEDIX as follows:

a. That all Products manufactured under this Agreement for OLEDIX shall conform to the Product Specifications provided by OLEDIX and the quality standard as agreed by both parties. Any Products not in conformance with such standards may be returned by OLEDIX to PTI. OLEDIX shall be liable for any expenses incurred by OLEDIX in returning such nonconforming Products, including the cost of freight, insurance, duties or other charges. In addition, within 30 working days of receiving a nonconforming Product from OLEDIX, if requested by OLEDIX, PTI shall provide to OLEDIX a replacement Product that is in conformance with the Product Specifications; and

b. That it will not deliver Products to any third party except to OLEDIX designees.

6.2 OLEDIX warrants to PTI that OLEDIX has lawful rights of ownership or authorization over the intellectual property concerned. Should OLEDIX be sued, claimed or charged by any third parties regarding the intellectual property rights concerned due to the Manufacturing Service providing by PTI hereunder, OLEDIX shall indemnify for any and all the actual losses incurred to PTI and designated manufacturer.

**7. PAYMENT FOR MANUFACTURING SERVICE**

7.1 For Manufacturing Services provided by PTI pursuant to this Agreement, OLEDIX shall pay to PTI according to the payment scheduled in the order. PTI shall furnish OLEDIX with a written invoice for each order. The price of service to include material coast, material mark-up of 35%, labor for any assembly, inspection, test and installation at $60/hr. and any other associated expenses. The terms of payment to be mutually agreed upon for each purchase order.

7.2 OLEDIX may cancel all or part of any Order at any time by REASONABLE notice to PTI. If such cancellation is not the fault of PTI, OLEDIX shall remain liable for the compensation of all relevant actual damages incurred by PTI;

a. PTI fails to follow the schedule of Manufacturing Services in such order confirmed by it, unless PTI receives OLEDIX written approval to deviate therefore;

b. The Samples of any Product, either submitted by OLEDIX or procured by OLEDIX in an on-site inspection does not satisfy the standards required by OLEDIX or if after a notice of a discrepancy and in a subsequent inspection the product still does not meet the afore mentioned standards;

c. OLEDIX fails to make delivery in accordance with the order, or otherwise fails to observe or comply with any of the terms or conditions set forth under this Agreement, or fails to make progress so as to endanger performance thereof.

3

## 8. PROTECTION OF CONFIDENTIAL INFORMATION

8.1 PTI shall not sublicense, make available or otherwise transfer any of its rights hereunder without prior written consent of OLEDIX.

8.2 As between the parties, all rights, title, and interest in the Confidential Information and relevant intellectual property are and shall remain with OLEDIX.

8.3 PTI shall not make any representations or do any acts that may be taken to indicate that it has any right, title or interest in or to the ownership or use of any of the Confidential Information and relevant intellectual property except as a licensee under the terms of this Agreement, and OLEDIX acknowledges that nothing contained in this agreement shall give PTI any right, title or interest in or to the Confidential Information and relevant intellectual property save as expressly granted herein.

8.4 OLEDIX agrees to take whatever action that is appropriate or necessary to protect OLEDIX and its licensors' rights in the Confidential Information and relevant intellectual property.

8.5 Both parties shall strictly comply with provisions under the Confidentiality Agreement during performance of this Agreement. Any breach of the Confidentiality Agreement shall directly lead to termination of this Agreement.

## 9. TERM AND TERMINATION

9.1 This Agreement shall have a definite term of five (5) years (hereinafter referred to as "Term" or Effective Period) at which time this Agreement will terminate unless extended in writing by both parties.

9.2 Both parties to this Agreement shall have the right to immediately terminate this Agreement at any time by giving written notice to the other, upon the occurrence of any of the following events:

    (a) either party fails to perform covenants or provisions of this Agreement if such default is not corrected within 30 working days after receiving the written notice from the other party with respect to such default;

    (b) violation by either party of the provisions under the Confidentiality Agreement;

    (c) any act, determination, filing, judgment, declaration, notice, appointment of receiver or trustee, failure to pay debts, or other events under any law applicable to either party indicating the insolvency or bankruptcy of such party;

    (d) any extraordinary governmental action, including but not limited to seizure or nationalization of assets, stock, or other property relating to either party; or

    (e) any other event that shall reasonably cause either party to have concern about the stability or solvency of the other party.

9.3 Unless otherwise agreed by OLEDIX in writing, the rights and obligations for both parties

4

prior to and upon termination of this Agreement shall be as follows:

a. OLEDIX hereby agrees that upon termination of this Agreement based on default of OLEDIX and provided OLEDIX has given the termination notice, PTI shall forthwith cease and desist in the manufacture of Products and other Manufacturing Services;

b. Both parties agrees that upon termination of this Agreement not based on defaults of OLEDIX, regarding the orders that have not been fulfilled yet, OLEDIX shall give formal notice without any delay whether to continuously fulfill the order or compensate for the actual losses incurred to PTI due to cancellation of such order;

c. PTI shall immediately return to OLEDIX all Products and molds made especially for Manufacturing Services, as well as the Confidential Information and relevant Intellectual property in whatever form and all copies thereto.

9.4 In the event of termination of this Agreement for any reason whatsoever, the Confidentiality Agreement shall survive for as long as necessary to effectuate their purposes and shall bind the parties.

## 10. SETTLEMENT OF DISPUTES

10.1 This Agreement shall be governed and construed in accordance with the laws of the State of Maryland. Any dispute relating to this Agreement shall be referred to arbitration in accordance with its arbitration rules, the award thereto shall be final and be executed unconditionally by both parties hereof.

11.1 No Waiver.
The failure of OLEDIX to assert any of its rights under this Agreement shall not be deemed to constitute a waiver of its rights thereafter to enforce each and every provision of this Agreement, in accordance with its terms. OLEDIX may, by written notice to OLEDIX, and only as to its own rights, (a) extend the time for the performance of any of the obligations or other actions of OLEDIX under this Agreement, (b) waive compliance with any of the conditions or covenants of OLEDIX contained in this Agreement, or (c) waive performance of any of the obligations of OLEDIX under this Agreement.

11.2 Force Majeure.
Notwithstanding anything in this Agreement to the contrary, no party shall be liable to the other party for any failure to perform or any delay in the performance of that party's obligations hereunder when such failure to perform or delay in performance is caused by an event of force majeure. For the purpose of this clause, the term "force majeure" shall include war, rebellion, civil disturbance, earthquake, fire, flood, strike, lockout, labor unrest, acts of governmental authorities, shortage of materials, acts of God, acts of the public enemy and, in general, any other causes or conditions beyond the reasonable control of the parties.

11.3 Notice.
All notices required by or permitted by or made pursuant to this Agreement shall be in writing and shall be sent by facsimile, email, overnight courier service, or by registered, first-class mail, return receipt requested and postage prepaid, to the following addresses:

5

If to OLEDIX: 729 E. Pratt St., Baltimore, MD 21202
If to PTI: 9600 Pulaski Park Drive, Baltimore, MD 21220

All such notices shall be deemed to have been received: (a) if by facsimile, email or overnight courier service, twenty-four (24) hours after transmission; and (b) if by registered, first-class airmail, five (5) days after dispatch.

11.4 Subject Headings.
The subject headings of this Agreement are included for the purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

11.6 Entire Agreement.
This Agreement embodies the entire agreement of OLEDIX with PTI with respect to the Manufacturing Services, and with exception to the NDA agreement signed and dated March 28, 2012 supersedes all other prior agreements, understandings and communications, whether written or oral, with respect to the subject matter hereof. Any Orders Products Specification and/or any other requirement produced by the PTI, once confirmed, Sales Confirmation or other written documents, such Sales Confirmation or written documents shall constitute inseparable parts of this Agreement, and shall be formally binding to both parties. No modification or amendment of this Agreement shall be effective, unless it is in writing and executed by a duly authorized representative of each party.

11.7 Severability.
If any term of this Agreement is held by a court/competent juridical arbitration tribunal to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

11.8 Any amendment of this Agreement shall be made in written form as agreed by both parties as part of this Agreement.

11.9 This Agreement shall be signed in duplicate of same legal effect with each party holding one copy and shall become effective when signed by the appointed representatives of both parties.

OLEDIX Technologies, LLC
Curtis Martin (signature): _____
President/CEO
Date: 03/29/12

Practical Technologies, Inc.
Dilip Dalvi (signature): _____
President/CEO
Date: MARCH 29, 2012

6

EXHIBIT "1-B"

RE:    NOTICE OF ASSIGNMENT OF ACCOUNTS

Dear Sir or Madam:

In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of New Century, Inc. ("New Century") as a source of capital funding. The availability of this service will enable us to serve our customers in a more efficient manner. Therefore, we wish to inform you that payments on all invoices or accounts and all future amounts due, should be made payable and mailed directly to:

Medix Technologies, LLC
and
New Century Financial
P.O. Box 27246
Houston, Texas 77227-7246

The assignment of our accounts has been duly recorded under the Uniform Commercial Code. Please make the proper notations on your accounting ledger and acknowledge this letter and that invoices are not subject to any offsets by signing this copy and returning it to New Century. If there are any questions concerning your billing, please call New Century at (713) 840-1600.

This notice and instruction remains in full force and effect until you are notified by New Century in writing to the contrary.

Sincerely,


Curtis R. Martin                            New Century Financial
Member                                      by: Nel Samonite, COO

PLEASE ACKNOWLEDGE AND FAX TO (713) 840-1615

We have read the above instructions for payment and will make the necessary changes.

Agreed to By: _____  Title: _PRESIDENT_

Please print name: _DILIP S. DALVI_

Authorized Representative of: _PRACTICAL TECHNOLOGIES, INC._  Date: _05/01/12_

Montgomery County District Court
***EFILED***
File & ServeXpress
Transaction ID: 49406359
Date: Feb 08 2013 02:38PM
Barbara Adamick, District Clerk

NO. 12-12-13542-CV

| | | |
|---|---|---|
| NEW CENTURY FINANCIAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| OLEDIX TECHNOLOGIES, LLC, | § | |
| CURTIS R. MARTIN, THE OLEDIX | § | |
| STORE, LLC, PRACTICAL | § | |
| TECHNOLOGIES, INC., AND | § | |
| DILIP S. DALVI | § | 410TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANTS PRACTICAL TECHNOLOGIES, INC. AND DILIP S. DALVI'S SPECIAL APPEARANCE

BE IT REMEMBERED on this day came on to be considered Defendants PRACTICAL TECHNOLOGIES, INC. and DILIP S. DALVI's Special Appearance, the response of Plaintiff NEW CENTURY FINANCIAL, INC., and arguments of counsel. The Court, after considering the Special Appearance, is of the opinion that said Special Appearance is with merit. It is therefore;

ORDERED that Defendants PRACTICAL TECHNOLOGIES, INC. and DILIP S. DALVI's Special Appearance is hereby GRANTED and that Plaintiff NEW CENTURY FINANCIAL, INC.'s causes of action against Defendants PRACTICAL TECHNOLOGIES, INC. and DILIP S. DALVI are hereby DISMISSED WITH PREJUDICE for refiling in the State of Texas.

SIGNED this _____ day of _____, 2013.

_____
JUDGE PRESIDING

01146.1 / 1540704.1

APPROVED AS TO FORM
AND SUBSTANCE:

HAYS, McCONN, RICE & PICKERING


By:  /s/ Michael W. Magee
       MICHAEL W. MAGEE
       State Bar No.: 12816040
       BRIANNE A. WATKINS
       State Bar No.: 24056500
       1233 West Loop South, Suite 1000
       Houston, Texas 77027
       Telephone: (713) 752-8343
       Facsimile: (713) 650-0027
       E-Mail: mmagee@haysmcconn.com

ATTORNEY FOR DEFENDANTS,
PRACTICAL TECHNOLOGIES, INC.
AND DILIP S. DALVI

2