```
              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

NEW CENTURY FINANCIAL, INC.,    §
                                §
         Plaintiff,             §
                                §
v.                              §     CIVIL ACTION NO. H-13-0391
                                §
OLEDIX TECHNOLOGIES, LLC,       §
CURTIS R. MARTIN, THE OLEDIX    §
STORE, LLC, PRACTICAL           §
TECHNOLOGIES, INC., and         §
DILIP S. DALVI,                 §
                                §
         Defendants.            §

MEMORANDUM AND ORDER

Pending is Defendants Practical Technologies, Inc.'s and Dilip S. Dalvi's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) (Document No. 3) and Defendants Practical Technologies, Inc.'s and Dilip S. Dalvi's Motion to Dismiss and/or Motion to Transfer Venue Pursuant to 12(b)(3) or 28 U.S.C. § 1404 (Document No. 12). After carefully considering the motions, responses, replies, and sur-reply, the Court concludes as follows.

I.  Background

Plaintiff New Century Financial, Inc. ("Plaintiff") entered an agreement with Defendants Oledix Technologies, LLC and The Oledix Store (collectively "Oledix")[1] in which Plaintiff agreed to

---

[1] Defendant Curtis Martin ("Martin") is the owner of Oledix Technologies, LLC and The Oledix Store. Document No. 14, ex. B at

purchase Oledix's accounts receivable at a discount.[2]  Plaintiff purchased from Oledix an invoice with an outstanding balance of $159,000 owed by Defendant Practical Technologies, Inc. ("PTI").[3] Plaintiff sent PTI's President and Chief Executive Officer, Dilip Dalvi ("Dalvi," and collectively with PTI, "the PTI Defendants"), a Notice of Assignment of Accounts, requesting that he confirm that the invoice was valid.  Dalvi confirmed to Plaintiff that the invoice was valid through communications that he directed to Texas by phone, fax, and email.  Plaintiff never received payment for the invoice.[4]  Plaintiff contends that the Oledix Defendants and the PTI Defendants conspired to commit fraud against Plaintiff by creating "false and/or fraudulent invoices for goods and/or services that were allegedly performed and/or delivered to PTI."[5] The Oledix Defendants have not yet answered Plaintiff's claims, but Plaintiff alleges against the PTI Defendants breach of the notice of assignment, tortious interference with contract, fraud, civil conspiracy, and negligent misrepresentation.[6]

---

2.  Defendants Oledix Technologies, LLC, The Oledix Store, and Curtis Martin will be referred to collectively as "The Oledix Defendants."

[2] Document No. 1, ex. B at 3 (Orig. Cmplt.).

[3] Id., ex. B at 4.

[4] Id., ex. B at 5.

[5] Id.

[6] Id., ex. B at 7-8.

2

## II. Motion to Dismiss Pursuant to Rule 12(b)(2)

### A. Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. *See* Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant who has substantial, systematic and continuous contacts

with the forum. *See* Johnston v. Multidata Systems Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a prima facie case of personal jurisdiction. *See* Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petro. Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a prima facie case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor. *See* Alpine View, 205 F.3d at 215.

B. The Contacts

Plaintiff contends that specific jurisdiction exists because the PTI Defendants directed misrepresentations to Plaintiff in Texas.[7] Plaintiff presents evidence that it sent a Notice of Assignment of Accounts ("NOA") to Dalvi, requesting a signature

---

[7] Document No. 7 at 6.

4

from the account debtor confirming that the invoice was not subject to any offsets.[8]  On May 1, 2012, Dalvi signed the NOA and faxed it to Plaintiff's headquarters in Texas.[9]  Dalvi also sent an email to Plaintiff the same day confirming that the invoice was valid and "good to pay when it's due," and also confirming that he had faxed the NOA.[10]  On May 2, Dalvi sent another email to Plaintiff asking when Oledix would receive payment from Plaintiff.[11] Also on May 2, Dalvi called Plaintiff on the telephone and discussed the NOA, as well as the emails exchanged between the parties.[12]  In all of these communications, Dalvi never disclosed that the goods had been rejected or returned to Oledix.[13]  Plaintiff contends that Dalvi's representations were false,[14] that Plaintiff relied on Dalvi's representations in deciding to purchase the invoice from Oledix, and that it would not have purchased the invoice if it had known that "the goods identified in the invoice were defective and had been rejected and returned to Oledix."[15]

---

[8] Id., ex. A at 3 (Somarriba Aff.).

[9] Id., ex. A at 3; Id., ex. A-4.

[10] Id., ex. A at 3; Id., ex. A-5.

[11] Id., ex. A-5.

[12] Id., ex. A at 3.

[13] Id.

[14] Document No. 1, ex. B at 5.

[15] Id.

In their motion, the PTI Defendants submit the affidavit of Dalvi, who describes the agreement between PTI and Oledix and attests to PTI's lack of Texas contacts.[16] He states that on March 29, 2012, PTI and Oledix entered into two contracts, in which PTI agreed to buy video conferencing systems from Oledix to customize and then either sell back to Oledix or to another customer.[17] Dalvi further states that: "The monitors that Oledix provided were manufactured in China.  The monitors that were delivered, however, were defective and could not be used to manufacture the video conference system.  As a result, PTI rejected the monitors, and placed them in Oledix's possession and control."[18]  In the following paragraph, Dalvi acknowledges receiving, signing, and returning the NOA.[19]

In their reply to the motion, the PTI Defendants present another affidavit from Dalvi for the declared purpose of providing "clarification regarding the facts."[20]  In this affidavit, Dalvi states that PTI received the video conferencing units on April 26, 2012 and began preliminary inspections of the units on April 30,

---

[16] Document No. 3, ex. 1 (Dalvi Aff. I).

[17] Id., exs. 1 & 1-A.

[18] Id., ex. 1 ¶ 5.

[19] Id. ¶ 6.

[20] Document No. 9 at 2.

2012.[21] They found some problems with the units, but Dalvi states that they thought the problems could be remedied.[22] Dalvi states that when he sent the NOA to Plaintiff, he thought that the invoice was valid in that they had received the units and thought that they would be able to proceed with the customization.[23] It was not until July 2012 that PTI realized the goods were defective and returned them.[24] Dalvi further states that PTI completed customization on one unit and returned it to Oledix, although PTI never received compensation from Oledix for the unit.[25] The remaining units were rejected and returned to Oledix.[26] Dalvi does not provide a date for when the goods were returned to Oledix. Moreover, the PTI Defendants present as evidence a letter from their attorney stating that the goods were rejected on April 30, 2012.[27] Dalvi explains this discrepancy by stating that this date was the date that the first problems with the goods were discovered.[28]

---

[21] Id., ex. 1 at 2 (Dalvi Aff. II).

[22] Id., ex. 1 at 2; Id., ex. 1-C.

[23] Id., ex. 1 at 2.

[24] Id., ex. 1 at 3.

[25] Id.

[26] Id.

[27] Document No. 1, ex. 1-H.

[28] Id., ex. 1 at 3.

C. <u>Analysis</u>

"It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum." <u>Bullion v. Gillespie</u>, 895 F.2d 213, 216 (5th Cir. 1990) (citing <u>Burger King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2184 (1985) ("we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . .")); *see also* <u>Burger King</u>, 105 S. Ct. at 2184 ("'[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

Plaintiff here is alleging fraud in the communications that the PTI Defendants sent to Plaintiff in Texas. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." <u>Wien Air</u>, 195 F.3d at 213. *See also* <u>Lewis v. Fresne</u>, 252 F.3d 352, 358-59 (5th Cir. 2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted.") (citing <u>Brown v. Flowers Indus.</u>, 688 F.2d 328, 332-33 (5th Cir. 1982)). Plaintiff's evidence is that Dalvi directed representations to Plaintiff in Texas through telephone, fax, and email. Plaintiff alleges that

these representations were false and fraudulent, and presents evidence that it relied on the misrepresentations to its detriment.

The PTI Defendants attempt to defeat Plaintiff's claim of specific jurisdiction by presenting a narrative to suggest the veracity of the representations. However, even the PTI Defendants' sometimes-conflicting affidavits and attached documents, including a letter from their attorney stating that the goods were rejected by PTI as of April 30, 2012, acknowledge that Dalvi knew of defects in the products before he signed the NOA on May 1, 2012, after his attorney says that Dalvi rejected the goods. Plaintiff is only required to establish a prima facie case for personal jurisdiction, and construing all facts in favor of Plaintiff, the Court finds that it has done so. *See* Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008) (only a prima facie case is required because "[a]ny greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials") (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." Wien Air, 195 F.3d at 215. In considering the fairness issue, the Court examines: "(1) the defendant's burden;

(2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 630 (5th Cir. 1999) (citations omitted). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." Wien Air, 195 F.3d at 215 (quoting Burger King, 105 S. Ct. at 2185). The PTI Defendants present no evidence to satisfy their burden, asserting merely that the case "does not involve substantive social policies" and stating that "there is no evidence that Plaintiff cannot obtain convenient and effective relief in Maryland."[29] Plaintiff is alleging that Defendant committed fraud, and Texas has a strong interest in protecting its citizens from fraud. *See, e.g.*, Walk Haydel & Assocs., Inc., 517 F.3d at 245 ("We have held that in a case like this, where a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities giving rise to personal jurisdiction, the exercise of that jurisdiction will be considered fair.") (citing Wien Air, 195 F.3d at 215). Moreover, the fact that Plaintiff may be able to obtain relief in Maryland does not establish that it is unfair to require the PTI Defendants to

---

[29] Document No. 3 at 9.

litigate this matter in Texas.  The PTI Defendants have not demonstrated that this Court's exercise of jurisdiction raises any fairness issues of Constitutional proportions.

### III. Motion to Dismiss and/or Motion to Transfer Venue Pursuant to 12(b)(3) or 28 U.S.C. § 1404

More than a month after filing their motion to dismiss pursuant to Rule 12(b)(2), the PTI Defendants filed a separate motion to dismiss pursuant to 12(b)(3) and/or a motion to transfer venue pursuant to 28 U.S.C. § 1404.[30]  Rule 12(g)(2) states that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  FED. R. CIV. P. 12(g)(2).[31]  Because the PTI Defendants filed a motion under Rule 12(b)(2) based on the same set of facts forming the basis of their later filed 12(b)(3) motion, they waived their improper venue defense.  FED. R. CIV. P. 12(h)(1)  ("A party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2) . . . .").  *See* Albany Ins. Co. v. Almacenadora Somex, S.A., 5 F.3d 907, 911 (5th Cir. 1993) (holding that a second motion even when served within 20 days of defendant's first motion could not be regarded as

---

[30] Document No. 12.

[31] Rule 12(g)(2) contains exceptions that are not applicable here.

an amendment of the first motion). "If a party seeks dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b), he must include in such motion any other defense or objection then available which Rule 12 permits to be raised by motion." Id. at 909.

The PTI Defendants also move to transfer venue to the District of Maryland pursuant to 28 U.S.C. § 1404.[32] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy, and money." Spiegelberg v. Collegiate Licensing Co., 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005) (citing Van Dusen v. Barrack, 84 S.Ct. 805, 809 (1964)); *see also* DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003). The transfer of an action under section 1404 is committed to the sound discretion of the district court. Jarvis Christian Coll. v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988).

Under section 1404(a), the movant bears the burden of showing "good cause" to transfer venue. In re Volkswagen of Am., Inc.

---

[32] Document No. 12 at 6-8.

("Volkswagen II"), 545 F.3d 304, 315 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1336 (2009).  "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled."  Id.  "When the movant demonstrates that the transferee venue is clearly more convenient . . . it has shown good cause and the district court should therefore grant the transfer."  Id.  However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  Id.  A court should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party."  Goodman Co., L.P. v. A & H Supply, Inc., 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (quotation marks and citation omitted).

The threshold issue under section 1404(a) is whether the plaintiff's claim could have been filed in the judicial district to which transfer is sought.  In re Volkswagen AG ("Volkswagen I"), 371 F.3d 201, 203 (5th Cir. 2004) (citing In re Horseshoe Entm't, 337 F.3d 429, 433 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 826 (2003)).  Here, Plaintiff does not dispute that it could have brought this action in the District of Maryland.

Whether to transfer a case under section 1404(a) "turns on a number of private and public interest factors, none of which are given dispositive weight."  Id.  These concerns include: (1) the convenience of parties and witnesses; (2) the cost of obtaining

attendance of witnesses and other trial expenses; (3) the availability of compulsory process; (4) the relative ease of access to sources of proof; (5) the place of the alleged wrong; (7) administrative difficulties flowing from court congestion; (8) the local interest in having localized interests decided at home; (9) the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary conflict of law problems; and (10) the interests of justice in general. *See* id. (citing Piper Aircraft Co. v. Reyno, 102 S. Ct. 252, 258 n.6 (1981)); *see also* Spiegelberg, 402 F. Supp. 2d at 789-90; Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1165 (S.D. Tex. 1994); DataTreasury, 243 F. Supp. 2d at 593.

The PTI Defendants' arguments in support of transfer focus on the location of witnesses and evidence, most of which they claim are in Maryland.[33] The PTI Defendants do not identify any of these alleged witnesses in their motion. In their reply, however, they list six witnesses, all but one of whom is a defendant and/or is employed by one of the defendants in this case.[34] The PTI Defendants present no argument for why it would be difficult to

---

[33] Document No. 12 at 7.

[34] Document No. 17, ex. A at 2. Gerald Roby is listed as an employee of Onsite Computers, who was acting as an IT consultant for PTI in testing the units. Id. They also note that the only customer to receive a customized video conference system is a located in Washington D.C. and its employees "will likely be located in the Washington DC and Maryland area." Id. They do not identify any employee as a potential witness, however.

produce employee witnesses at trial. And although they identify one non-employee witness that resides in Maryland, Plaintiff has identified two non-employees in Texas that it would call as witnesses.[35] *See* Gundle Lining Const., 844 F. Supp. at 1166 ("It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight."). This factor does not weigh in favor of transfer.

The PTI Defendants allege that the rejected goods are in Maryland,[36] but do not show why the goods need to be brought to trial--either in Texas or Maryland--to resolve the dispute arising out of Plaintiff's factoring arrangement. They also state that documents related to the goods are in Maryland, but do not show why whatever relevant documents they have cannot easily be transported to Texas. The nature of the controversy itself suggests that this is not a document-intensive case. The PTI Defendants fail to carry their burden on this factor. *See* Evol, Inc. v. Supplement Servs., LLC, Civ. A. No. 3:09-CV-1839-O, 2010 WL 972250, at *2 (N.D. Tex. Feb. 28, 2010) (holding this factor neutral where movant made no showing of number and volume of documents, and thus "failed to show

---

[35] Document No. 14, ex. B (Enriquez Aff.). Plaintiff's former employees Ramevel Longinos and Susan Drake both worked on the Oledix account for Plaintiff and were involved in the communications with the PTI Defendants, as well. Both reside in Texas. Id.

[36] Document No. 12, ex. 1 at 3.

that the amount of documents and their location would impose a hardship upon the parties"). This factor does not weigh in favor of transfer.

The PTI Defendants also argue that the place of the alleged wrong is Maryland, where PTI rejected the goods and refused to pay for them. The claims against the PTI Defendants, however, are for fraud directed at the Plaintiff in Texas, not just a breach of the contract between Oledix and PTI, which PTI emphasizes. Both Texas and Maryland thus have a connection to the fraud claim and, as already observed, Texas has a vital interest in protecting its citizens from fraud. Moreover, the PTI Defendants have made no showing that there is any problematic conflict of Maryland law and Texas law as applied to the issues in this case.

Finally, the interests of justice do not favor transfer of the case. Plaintiff brought this suit against not only the PTI Defendants but also the Oledix Defendants, with whom Plaintiff had a contractual relationship that included a choice-of-forum clause designating that the "venue and jurisdiction will be exclusively in the state district courts in Montgomery County, Texas, and the federal district courts of Harris County, Texas."[37] Although this provision is not binding on the PTI Defendants, it does add support for maintaining venue in Plaintiff's chosen forum. Accordingly, after having weighed the several factors and having considered the

---

[37] Document No. 14, ex. A-1 ¶ 48.

deference that otherwise should be given to Plaintiff's choice of forum, Defendants' request to transfer will be denied.

IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants Practical Technologies, Inc.'s and Dilip S. Dalvi's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) (Document No. 3), and their Motion to Dismiss and/or Motion to Transfer Venue Pursuant to 12(b)(3) or 28 U.S.C. § 1404, are in all things DENIED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 25th day of June, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE